812774/DMS

**FILED**

JUL 24 2002

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL RIZZO and LOUISE RIZZO, | ) ) | |
| Plaintiffs | ) | Case No. 02 C 1992 |
| vs. | ) | Judge Norgle |
| | ) | Magistrate Judge Bobrick |
| PIERCE & ASSOCIATES, P.C., | ) | |
| Defendant | ) | |

**DOCKETED**

JUL 25 2002

## NOTICE OF FILING

TO: Ms. Adela Lucchesi, Edelman, Combs & Latturner, LLC., 120 S. LaSalle Street, 18th Floor, Chicago, Illinois 60603

PLEASE TAKE NOTICE that on the 24th day of July, 2002, Defendant caused the following items to be filed in the United States District Court for the Northern District of Illinois: (1) Motion to Partial Summary Judgment, (2) Memorandum of Law in Support of Motion for Partial Summary Judgment; () Local Rule 56.1 Statement of Facts in Support of Summary Judgment; and (4) Response to Court's Order Dealing with the Rooker-Feldman Doctrine.

By: _____

David M. Schultz, Esq.
James C. Vlahakis
Hinshaw & Culbertson
222 North LaSalle
Chicago, IL 60601
(312) 704-3000

### Proof of Service

The undersigned, an attorney, on oath state that I caused a copy of the foregoing Notice and documents to be served on the above party(ies) by depositing the same in the U.S. Mail at 222 North LaSalle, Chicago, Illinois by 5:00 p.m. on the 24th day of July, 2002, with proper postage prepaid.

_____

[x]Under penalties as provided by law
pursuant to Ill.Rev.Stats. Chapter. 110,
Sec. 1-109, I certify that the statements
set forth herein are true and correct.

5503083v1 812774



**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

MICHAEL RIZZO and LOUISE, )
RIZZO, )
                         )    Case No. 02 C 1992
         **Plaintiffs,** )
                         )    Judge Norgle
**v.** )
                         )    Magistrate Judge Bobrick
**PIERCE & ASSOCIATES, P.C.,** )
                         )
         **Defendant.** )

**DEFENDANT, PIERCE & ASSOCIATES, P.C.'S,**
**MOTION FOR PARTIAL SUMMARY SUMMARY JUDGMENT**

Defendant, PIERCE & ASSOCIATES, P.C., by its attorneys, David M. Schultz and James C. Vlahakis, and pursuant to Rule 56 of the Federal Code of Civil Procedure respectfully moves for the entry of summary judgment in it favor and against plaintiff's Complaint at Law. In support Defendant states as follows:

**INTRODUCTION**

1.     This case is a one count complaint brought pursuant to the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*

2.     Plaintiffs defaulted on a home mortgage and Defendant, on behalf of its client, filed a foreclosure complaint against them and proceeded to judgment. The Plaintiffs allege that Defendant violated the FDCPA by collecting, on behalf of its client, what they term "unauthorized" "post-acceleration late charges" when the Plaintiffs reinstated their mortgage. *See,* Plaintiffs' complaint, ¶¶ 17-18.

**STANDARD OF REVIEW**

3.     Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on

11029890v1 812774

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Plaintiffs cannot defeat the entry of summary judgment against them by offering conjecture or surmise. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Rather, to avert the entry of summary judgment against them, Plaintiffs must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Garcia v. Volva Europa Truck, N.V.,* 112 F.3d 291, 294 (7th Cir. 1997).

### SUMMARY OF DEFENDANT'S ARGUMENT

5.      Defendant asserts that it was lawfully allowed to collect in the reinstatement of the mortgage the late charges which of 5% that the Plaintiffs contracted to pay in the event that they missed a monthly payment.  When a borrower like the Rizzos defaults on its payments and a default and acceleration proceedings begin, a lender may lawfully obtain payment for all costs, attorney's fees and late payments associated with the default where the mortgage agreement so provides.  This practice comports with the Illinois Mortgage Foreclosure Act and finds support from cases which did not directly decide this issue.  Because Defendant's conduct was lawful and authorized by the mortgage agreement itself, it did not violate the FDCPA.  For these reasons, it is entitled to summary judgment.

6.      Contemporaneously with the filing of this Motion, Defendant has filed a Memorandum of Law and a Local Rule 56.1 Statement of Undisputed Facts.

11029890v1 812774

WHEREFORE, for the reasons set forth above, Defendant, PIERCE & ASSOCIATES, P.C., submits that it is entitled to summary judgment as a matter of law because Plaintiffs cannot establish a violation Fair Debt Collection Practices Act.

Respectfully submitted,
PIERCE & ASSOCIATES, P.C.

By: _____
One of its Attorneys

David M. Schultz
James C. Vlahakis
HINSHAW & CULBERTSON
222 N. LaSalle Street, Suite 300
Chicago, IL  60601
312-704-3000

11029890v1 812774

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL RIZZO and LOUISE, RIZZO, )
    )    Case No. 02 C 1992
    Plaintiffs, )
    )    Judge Norgle
v. )
    )    Magistrate Judge Bobrick
PIERCE & ASSOCIATES, P.C., )
    )
    Defendant. )

**DEFENDANT, PIERCE & ASSOCIATES, P.C.'S, MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant, PIERCE & ASSOCIATES, P.C., by its attorneys, David M. Schultz and James C. Vlahakis, and pursuant to Rule 56 of the Federal Code of Civil Procedure submits the following as its Memorandum of Law in Support of Motion for Partial Summary Judgment:

**I.    INTRODUCTION**

This case is a one count complaint brought pursuant to the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* Plaintiffs, Michael Rizzo and Louise Rizzo (the "Rizzos"), defaulted on a second mortgage on their house and Pierce & Associates filed a foreclosure action on behalf of the mortgagor and a judgment was entered against the Rizzos. The Rizzos negotiated the reinstatement of their mortgage and agreed to pay $12,000 to do so. Shortly thereafter, the Rizzos' current counsel filed an appearance in the foreclosure action. On March 4, 2002, an order of dismissal was entered based upon the reinstatement.

Two weeks after the foreclosure was dismissed, the Rizzos filed this suit. The Rizzos allege that Pierce & Associates violated the FDCPA in July of 2001 when it purportedly attempted to collect what the Rizzos call "unauthorized" "post-acceleration late charges." *See,* Pls.' complaint, ¶¶ 15, 17-18. The Rizzos further allege that "[o]nce the loan is accelerated and

1

there are no monthly payments due unless and until the loan is reinstated." *Id.* at ¶ 16. Citing Pierce & Associates' website, the Rizzos also allege that Pierce & Associates "knew that post-acceleration late charges are unauthorized, as shown by <u>Exhibits C-D</u>, which are excerpts from information on a Web site maintained by Pierce & Associates, P.C." *Id.* at ¶ 18. The complaint concludes that this conduct violates Sections 1692e, 16992f and 1692f(1) of the FDCPA.[1] *Id.* at ¶ 21.

Contrary to this novel legal theory, when a foreclosure action is filed but the borrower seeks to *reinstate* the mortgage, a lender may lawfully obtain payment for all costs, attorney's fees and late payments associated with the default. That is exactly what occurred in this case. In fact, the Rizzos' specifically contracted for this event in their Mortgage and Note. Consequently, because Pierce & Associates was contractually entitled to seek recovery of the late charges in the event of a reinstatement, its conduct did not violate any provision of the FDCPA, common law or the Illinois Mortgage Foreclosure Act. For these reasons, Pierce & Associates is entitled to judgment in its favor. This motion for partial summary judgment is limited to the issues raised above.

---

[1]      Section 1692e of the FDCPA prohibits the use of any "false representation of . . . the character, amount, or legal status of any debt." Section 1692f prohibits the use of any "unfair or unconscionable means" to collect a debt. Section 1692f(1) specifically identifies an "unfair" practice as the collection of any amount unless expressly authorized by agreement or permitted by law.

2

5531423v1 812774

## II.    STATEMENT OF FACTS

The following facts are taken from Pierce & Associates' Rule 56.1 Statement.  On or about August 19, 1997, the Rizzos entered into a second mortgage with Decision One Mortgage Company to borrow $46,850.00 (the "Mortgage").  *See* Pierce & Associates' Rule 56.1 Statement, ¶ 2, 4.  The Mortgage was secured by the Rizzo's home.  ¶ 2.  On that same date, the Rizzos also signed a Promissory Note making them personally liable for the repayment of the money lent.  ¶ 5.  Pursuant to the signed Note and Mortgage, the Rizzos agreed to pay the lender principal and interest on the loan in monthly payments in the amount of $674.88.  ¶ 6.

Pursuant to paragraphs three and four of the Note, the Rizzos agreed that if the note holder did not receive the full amount of any of the monthly payments by the end of 15 days after the date it was due they would pay a late charge to the note holder in the amount of 5% of the overdue payment.  ¶¶ 7-9.  Pursuant to paragraph 18 of the Mortgage, the Rizzos agreed that in order to reinstate the Mortgage, they were required to pay the lender all sums which would be then due under the mortgage and the note had the acceleration never occurred.  ¶ 11.

Starting on or about July 2000, the Rizzos failed to make their monthly mortgage payments.  *See* Pierce & Associates' Rule 56.1 Statement, ¶ 12.  As a consequence, on November 3, 2000, Pierce & Associates filed a mortgage foreclosure action on the plaintiffs' mortgage in DuPage County, Illinois, pursuant to the Illinois Mortgage Foreclosure Statute (735 ILCS 5/1501, *et seq.*).  ¶ 13.[2]  On May 30, 2001, a judgment was entered in the foreclosure case directing the sale of the property.  ¶ 15.

---

[2]    At the time the suit was filed, the Rizzos had failed to make their July, August, September and October payments.  ¶ 12.  The Rizzos were served on November 9, 2000.  ¶ 14.

5531423v1 812774

On January 22, 2002, Mr. Rizzo spoke with a representative of Fairbanks Capital and exercised the Rizzos' right to reinstate. ¶ 17. In doing so, pursuant to paragraph eighteen of their Mortgage, the Rizzos were required to cure all of the defaulted payments and late charges. ¶¶ 9, 11. Subsequently, on January 22 and 25, 2002, the Rizzos tendered $12,000 to Fairbanks Capital to reinstate their Mortgage. ¶¶ 18, 21. On January 28, 2002, by way of a motion to dismiss filed in the foreclosure action, the Rizzos represented in part that "Mr. Rizzo reached an agreement for the reinstatement of the mortgage with plaintiff's servicing agent, Fairbanks Capital Corporation. The agreement called for the wire transfer of $4,000 that morning and $7,517.94 in a week." ¶ 20. In said motion, the Rizzos also represented that they had "entered into an unconditional agreement with plaintiffs, which has now been fully performed by plaintiffs" and that "an agreement to permit reinstatement was made by Fairbanks Capital. Fairbanks Capital obtained Mr. and Mrs. Rizzo's money as a result." ¶ 22. The Rizzos further asserted that "the mortgage should be reinstated and the case dismissed." *Id.* At that time, the Rizzos did not object their payment of the amount tendered as being in violation of the Fair Debt Collection Practices Act or any other law. ¶ 23.

On or about February 6, 2002, the Rizzos and the plaintiff/mortgage holder in the foreclosure action, Manufacturer's & Traders Trust Company, entered into an Agreed Order, which provided that the Rizzos would tender $4,000.00 before February 27, 2002, to reinstate the subject loan and that upon Manufacturer's & Traders Trust Company's receipt of the payment, the loan would be reinstated and the matter would be voluntarily dismissed without prejudice. ¶ 24. On March 4, 2002, Manufacturer's & Traders Trust filed a motion to dismiss the foreclosure action, without prejudice, "on the ground that the mortgage has been reinstated." ¶ 25. On

4

March 4, 2002, the circuit court entered an order dismissing the foreclosure action due to reinstatement of the subject mortgage. ¶ 26. The Rizzos filed this suit on March 18, 2002.

### III.  ARGUMENT

#### A.  Pierce & Associates Were Authorized To Collect Late Charges From The Rizzos When They Sought to Reinstate the Mortgage

As set forth above, Pierce & Associates filed a foreclosure action against the Rizzos on November 3, 2000, after they failed to make the required payments pursuant to the Mortgage and Note.   Judgment was entered against the Rizzos on May 30, 2001.   Before any sale of the property occurred, the Rizzos decided to exercise their option to reinstate their mortgage. Pursuant paragraph 18 of the Rizzos' Mortgage, the Rizzos were required to cure all of the amounts due under their loan as if the acceleration had never occurred:

> **18. BORROWER'S RIGHT TO REINSTATE.**  Notwithstanding lender's acceleration of the sum secured by this mortgage due to borrower's breach, borrower shall have the right to have any proceedings begun by lender to enforce this mortgage discontinued at any time prior to entry of a judgment enforcing this mortgage if: (a) borrower pays lender **all sums which would be then due under the mortgage and the note had no acceleration occurred; (b) borrower cures all breaches of any other covenants or agreements of borrower contained in this mortgage;** (c) borrower pays all reasonable expenses incurred by lender in enforcing the covenants and agreements of borrower contained in this mortgage and in enforcing lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorney's fees . . . .

5531423v1 812774

A review of the Mortgage and Note establishes that the Rizzos were obligated to submit their monthly payments on or before the 25th day of each month in the amount of $ 674.88. In the event that the Rizzos failed to meet this obligation, paragraph 4 of the note provided:d

**BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge For Overdue Payments**
If the Note Holder has not received the full amount of any of my monthly payments by the end of **FIFTEEN** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.0%** of my overdue payment, but not less than U.S. $ <u>N/A</u> and not more than U.S. $ <u>N/A.</u> I will pay this late charge only once on any late payment.

\* \* \*

**(C) Default**
If I do not pay the overdue amount by the date stated in the notice described in (B) above, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of the principal which has not been paid and all the interest that I owe on that amount.
Even if, at the time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

Prior to the filing of the foreclosure, the Rizzos failed to pay four monthly payments as well as the late fees associated with these missed payments. *See* Defendant's Rule 56.1 Statement of Facts, ¶ 12. Consequently, pursuant to the interplay of paragraphs 4(a) and 4(c) of the Note and paragraph 18 of the Mortgage, at the time the Rizzos chose to reinstate their Mortgage, in order to fully reinstate, they were required to tender all past due monthly payments, interest, as well as all late fees and expenses required under their Mortgage and Note. Because these terms were fully set forth by the Mortgage and Note, it was entirely lawful for Pierce & Associates to demand and receive payment for these amounts.[3]

---

[3]     The terms of the Note govern the obligations of the Rizzos in the context of the reinstatement or payoff of their loan.

6

The lawfulness of Pierce & Associates' conduct is supported by Section 5/15-1602 of the Illinois Mortgage Foreclosure Act, which provides and a mortgagors may reinstate their mortgage within 90 days from the date they have been served or have otherwise submitted to the jurisdiction of the court:

> In any foreclosure of a mortgage executed after July 21, 1959, which has become due prior to the maturity date fixed in the mortgage, or in any instrument or obligation secured by the mortgage, through acceleration because of a default under the mortgage, a mortgagor may reinstate the mortgage as provided herein. **Reinstatement is effected by curing all defaults then existing,** other than payment of such portion of the principal which would not have been due had no acceleration occurred **and by paying all costs and expenses required by the mortgage to be paid in the event of such defaults,** provided that such cure and payment are made prior to the expiration of 90 days from the date the mortgagor or, if more than one, all the mortgagors (i) have been served with summons or by publication or (ii) have otherwise submitted to the jurisdiction of the court.

Here, in seeking reimbursement for the late fees accrued, Pierce & Associates, sought an amount it was legally obligated to request under Illinois law as well as the mortgage agreement. Simply stated, Pierce & Associates requested that the Rizzos cure the missed monthly payment (the default payments) as well as the related contractual expenses (late fees).[4]

Further support for propriety of Pierce & Associates' conduct comes from *Willett v. Mid First Bank*, 196 B.R. 732 (W.D. Pa. 1996), which decided the issue of whether mortgage terms and conditions apply after reinstatement of a mortgage. In *Willett*, the bank foreclosed on the debtor's mortgage and obtained a foreclosure judgment. After the foreclosure judgment the

---

[4]    Incidentally, Pierce & Associates were not legally obligated to accept the Rizzos' attempt to reinstate in light of the fact that the 90 day reinstatement period had expired.

5531423v1 812774

debtor decided to reinstate the mortgage. The debtor argued that after the judgment was taken, its obligation was no longer based on the mortgage documents, but rather, it was based on the later judgment. The debtor also argued that upon taking a foreclosure judgment, a bank's mortgage merged into the judgment which rendered the terms of the mortgage inapplicable. The bankruptcy court rejected both arguments:

> The debtor's proposed plan contemplates a cure of the default. 'Curing a default means taking care of the triggering event and returning to pre-fault default conditions.' *In Re Taddeo*, 685 F.2d 24 (2nd Cir. 1982). Curing a default means that 'the event of default is remedied and the consequences are nullified.' *Id* at 28. 'Stated differently, a cure returns the parties to the status quo ante *by paying all the arrearages on the debt and reinstating the debt's original terms*.' *In Re Johnson*, 184 B.R. 570, 574 (Bankr. D.Minn. 1995). *See also In Re Clark*, 738 F.2d 869, 872 (7th Cir. 1984).

*Id.* at 733 (emphasis supplied).

Accordingly, the *Willett* court determined that when the debtor elected to cure and reinstate the mortgage, he again became liable for interest and all other charges which accrued under the terms of the mortgage as if no judgment were ever taken.

As an additional matter, if the late fees were not paid by the Rizzos, their actions would not have constituted a binding reinstatement of the mortgage. In *Crown Life Insurance Company v. American National Bank and Trust Company of Chicago*, 1996 WL 432399 (N.D. Ill. 1996), Crown Life Insurance Company filed a complaint for foreclosure of mortgage and other relief against American National Bank and Trust Company of Chicago after the borrowers defaulted under the note by failing to make the two payments. Crown accelerated the unpaid balance as allowed under the note. Although the borrower eventually made payments equivalent to the

8

January and February payments on March 1, the borrower failed to pay accumulated late fees for the January and February payments as well as Crown's attorney's fees and costs incurred prosecuting the action. The district court determined that because the borrower failed to pay these late charges, its actions were insufficient to reinstate the note and the mortgage and the borrower defendants continued to be in default. *Id* at *3. In so holding, the court determined that the borrowers had failed to establish a reinstatement and redemption under the Illinois Mortgage Foreclosure Law. *Id*.

In *Petersen v. Farm Credit Services of the Midlands, FLCA*, 1999 WL 703623, *11 (Neb. App. 1999), the Nebraska Court of Appeals reversed trial court's decision that lender committed an unconscionable act in reinstating a prior written-off debt in the amount of $81,249.21 after the borrower had failed to abide by the terms of a loan restructuring agreement. Holding that the terms of the loan restructuring agreement controlled despite the institution of foreclosure proceedings and acceleration, the court found that "the above-mentioned federal regulation [12 C.F.R. § 614.4514 at 139] and both Nebraska statues provide that the right to cure and avoid acceleration is based on the borrower paying – in the words of the federal regulation – 'all accrued payments'").[5]

---

[5] 12 C.F.R. § 614.4514, which relates to loans covered by the Farm Credit System, provides:

After a borrower has made all accrued payments of principal, interest, *and penalties with respect to a loan* made by a qualified lender, the lender shall not enforce acceleration of the borrower's repayment schedule due to the borrower having not timely made one or more principle and/or interest payments. (Emphasis supplied).

This regulation, which is similar to Section 15-1602 of the Illinois Mortgage Foreclosure Act, supports the right of a lender to demand late fees in the event of reinstatement after foreclosure. *See, also,* 11 U.S.C. § 1322(e) which was amended in 1994 to provide that lenders may obtain arrearages from Chapter 13 debtors if the underlying loan agreements so provided.

9

5531423v1 812774

In summary, the mortgage and note specifically provide for late charges for failure to timely pay the monthly installments. Thus, if the Rizzos failed to make any monthly payments on time, then a late charge is authorized by the mortgage and note. It is undisputed in this instance that the Rizzos did not make certain monthly payments. As a result of their failure to make these monthly payments, late charges were incurred pursuant to the mortgage and note. In order to properly reinstate the mortgage, pursuant to the mortgage and note, the Rizzos were required to pay these fees and charges. *See, e.g.,* Section 15-1602 of the Illinois Mortgage Foreclosure Act (providing that "Reinstatement is effected by curing all defaults then existing . . . and by paying all costs and expenses required by the mortgage to be paid in the event of such defaults"). By seeking to reinstate, the Rizzos cannot turn back the clock and ignore the their failure to make their monthly payments on time and the late fees that were generated by the missed payments. To hold otherwise would allow homeowners to default on their mortgage payments and ignore the resultant late fees in the event that choose to reinstate on a later date. In the worse case scenario, a homeowner could drag a foreclosure suit our for an extended period of time, knowing that the late fees would be of no consequence.

### B.   Pierce & Associates Did Not Commit a False or Misleading Act in Violation of Sections 1692e and 1692f of the FDCPA

Section 1692e of the FDCPA prohibits debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt" and identifies sixteen non-exclusive subsets of false or misleading representations which are barred under the Act. Section 1692f prohibits any "unfair or unconscionable means to collect or attempt to collect any debt." It includes the "collection of any amount (including any interest, fee, charge, or

10

5531423v1 812774

expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f (1).

Here, the Rizzos' complaint fails to point to any specific subsection of Section 1692e though it does specifically point to 1692f(1). As set forth above, Pierce & Associates did not attempt to collect on an unlawful or unauthorized amount and did not make "any false, deceptive, or misleading representation[s]" in the foreclosure proceedings. The Mortgage and Note specifically provide that in order to fully cure the defaults through redemption, the Rizzos were required to reinstate the Mortgage *all* of those amounts that would have been due under the mortgage had no acceleration occurred.

As a final matter, there is no merit to the Rizzos' conclusory allegation in paragraph 18 of the complaint that Pierce & Associates has made admissions that it knew that it conduct in question violated the FDCPA. In support of this assertion, the Rizzos' complaint attaches a copies of Pierce & Associates newsletters that were posted on its website. In paragraph 18, the Rizzos contend that these newsletters contain some sort of admission as to the legality of Pierce & Associates' attempts to collect late charges. However, these newsletters have no such implications. They simply speak about the status of some consumer litigation which has been filed to challenge certain late charges under certain circumstances. By no means do they involve a statement of the law or any court holdings that have any binding effect. Rather, one of the newsletters which is attached as Exhibit C to the complaint discusses the scenarios in which late fees could be charged:

> The firm of Pierce & Associates, as well as a number of other USFN members have reviewed the issue of collecting late charges on loans that pay off after the loan has been accelerated. It seems to be the opinion of most and of our firm that

11

to do so opens up the lender and the law firm to potential class action lawsuits. The reasoning behind this issue is that if the loan has been accelerated, and the entire loan is due, there are no longer monthly payments due and therefore there are no monthly payments due and consequently late charges are not due. **This reasoning does not apply to loans that reinstate because when a loan reinstates the loan is no longer accelerated and monthly payments become due again.** (Emphasis supplied).

The last sentence of the above paragraph specifically supports the defendant's argument that late fees may be collected for loans that reinstate. For whatever reason, the Rizzo have ignored this particular sentence. Consequently, the complaint mischaracterizes these web pages when it states, "Pierce & Associates *knew* that post-acceleration late charges are unauthorized as shown by Exhibits C and D." (Emphasis supplied). In any event, it is a stretch to hold a law firm liable under the FDCPA simply because it has acknowledged that the plaintiffs' bar has filed suit on a particular issue. Put another way, simply because suits may have been filed on this issue elsewhere does not mean that Pierce and Associates knowingly violated the FDCPA.

## IV. CONCLUSION

It is undisputed that the Rizzos did not make certain monthly payments and incurred late fees. It is also undisputed that the Mortgage and Note provided for the imposition of late fees on charges where the Rizzos failed to make a timely monthly installment. As these cases suggest and the Illinois Mortgage Foreclosure Act specifically provides, in order to properly reinstate a mortgage, a lender can require the payment of late fees if provided for in the subject mortgage and note.

5531423v1 812774

WHEREFORE, for the reasons set forth above, Defendant, PIERCE & ASSOCIATES,

P.C., submits that it is entitled to summary judgment as a matter of law because Plaintiffs have

failed to establish a violation Fair Debt Collection Practices Act.

Respectfully submitted,

PIERCE & ASSOCIATES, P.C.

By: _____

One of its Attorneys

David M. Schultz
James C. Vlahakis
HINSHAW & CULBERTSON
222 N. LaSalle Street, Suite 300
Chicago, IL 60601
312-704-3000

13

5531423v1 812774

FILED

JUL 2 4 2002

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| MICHAEL RIZZO and LOUISE, RIZZO, | ) | Case No. 02 C 1992 |
|  | ) |  |
| Plaintiffs, | ) | Judge Norgle |
| v. | ) |  |
|  | ) | Magistrate Judge Bobrick |
| PIERCE & ASSOCIATES, P.C., | ) |  |
|  | ) |  |
| Defendant. | ) |  |

DOCKETED
JUL 29 2002

**DEFENDANT, PIERCE & ASSOCIATES, P.C.'S, LOCAL RULE 56.1**
**STATEMENT OF FACTS IN SUPPORT OF SUMMARY JUDGMENT**

Defendant, PIERCE & ASSOCIATES, P.C., by its attorneys, David M. Schultz and James C. Vlahakis, and pursuant to Rule 56 of the Federal Code of Civil Procedure and Local Rule 56.1 of the Northern District of Illinois, submit the following as their Local Rule 56.1 Statement of Undisputed Facts in support of its motion summary judgment:

**PARTIES, JURISDICTION & VENUE**

1.      Plaintiffs are Michael Rizzo and Louise Rizzo (hereinafter "the Rizzos"), a husband and wife, who reside at 6085 Puffer Road, Downers Grove, Illinois 60516. (Plaintiff's complaint at law, ¶ 4).

2.      Plaintiffs purport to be consumers as defined in the FDCPA, in that the debt at issue in this is a residential second mortgage loan obtained for personal, family or household purposes. (Plaintiff's complaint at law, ¶ 3).

3.      Defendant, Pierce & Associates, P.C., is a Chicago based law firm that attempts to collect residential mortgage debts within the Northern District of Illinois. (Plaintiff's complaint, ¶¶ 3, 6 & 7; Defendant's answer, ¶¶ 3, 6 & 7).

1

11029891v2 812774

4. On or about August 19, 1997, the Rizzos entered into a Mortgage with Decision One Mortgage Company in order to borrow $46,850.00. (Group Exhibit A, Mortgage, p. 1 and Note, p. 1).

5. On or about August 19, 1997, the Rizzos also signed a promissory note ("Note") making them personally liable for the repayment of the money lent. (Group Exhibit A, Note, p. 1, ¶ 1).

6. Pursuant to a Note and the Mortgage, the Rizzos agreed to pay, Decision One Mortgage Company, the lender/mortgagee, principal and interest on the loan by making monthly payments in the amount of $674.88. (Group Exhibit A, Note, p. 1, ¶ 3).

7. Pursuant to paragraphs three and four of the note, the Rizzos agreed that if the "note holder" did not receive the full amount of any of the monthly payments ($674.88) by the end of 15 days after the date it was due (the 25th of each month), they would pay a late charge to the note holder in the amount of five percent of the overdue payment. (Group Exhibit A, promissory note, p. 1, ¶¶ 3-4).

8. The Rizzos agreed to be bound by the terms of paragraph 3 of the note which provided:

**PAYMENTS.**
I will principal and interest by making payments each month of U.S. **$674.88**. I will make my payments on the **25TH** day of each month beginning on **SEPTEMBER 25,1997**. I will make these payments every month until I have paid all of the principal and interest and any other charges, described below, that I may owe under this note. If on **AUGUST 25, 2007**, I still owe amounts under this Note, I will pay all those amounts, in full on that date. I will make my monthly payments at 4601 Park Road Suite 500,Charlotte, North Carolina 28209 or at a different place of the note holder.

(Group Exhibit A, Note, p. 1, ¶ 3).

9.     The Rizzos agreed to be bound by the terms of paragraph 4(A) of the note which

provided:

> **BORROWER'S FAILURE TO PAY AS REQUIRED**
> **(A) Late Charge For Overdue Payments**
> If the Note Holder has not received the full amount of any of my monthly payments by the end of **FIFTEEN** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.0%** of my overdue payment, but not less than U.S. $ <u>N/A</u> and not more than U.S. $ <u>N/A.</u> I will pay this late charge only once on any late payment.

(Group Exhibit A, Note, p. 1, ¶ 4(A)).

10.     The Rizzos agreed to be bound by the terms of paragraph 4(D) of the Note which

provided:

> **(D) Payment of Note Holder's Costs and Expenses**
> If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all of its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

(Group Exhibit A, Note, p. 1, ¶ 4(D)).

11.     The Rizzos and the Lender agreed to be bound by the terms of paragraph 18 of the

mortgage document which provided:

> **18.    BORROWER'S RIGHT TO REINSTATE.**   Notwithstanding lender's acceleration of the sum secured by this mortgage due to borrower's breach, borrower shall have the right to have any proceedings begun by lender to enforce this mortgage discontinued at any time prior to entry of a judgment enforcing this mortgage if:  (a) borrower pays lender all sums which would be then due under the mortgage and the note had no acceleration occurred; (b) borrower cures all breaches of any other covenants or agreements of borrower contained in this mortgage; (c) borrower pays all reasonable expenses incurred by lender in enforcing the covenants and agreements of borrower contained in this mortgage and in enforcing lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorney's fees; and Borrower takes such action a Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired.  Upon

such payment and cure by Borrower, this Mortgage and obligations secured hereby shall remain in full force as if no acceleration had occurred.

(Exhibit B, Mortgage, p. 4, ¶ 18)

12.    The Rizzos failed to make their monthly mortgage payments for the months of July, August, September and October of 2002.  (Group Exhibit B, "Complaint to Foreclose Mortgage," p. 2, ¶ (l)).

13.    On November 3, 2000, Pierce & Associates filed a mortgage foreclosure action on the plaintiffs' mortgage in DuPage County, Illinois. (Group Exhibit B, "Complaint to Foreclose Mortgage"; *see also,* Plaintiffs' complaint, ¶ 12; Defendant's answer, ¶ 12).

14.    The Rizzos (Louis Rizzo personally) were served with a copy of the mortgage foreclosure action on November 9, 2000.  (Group Exhibit B, "Certificate" of service).

15.    On May 30, 2001, a judgment was entered in the foreclosure case directing the sale of the property.  (Group Exhibit B, Judgment For Foreclosure and Sale and Order of Default; *see also,* Plaintiffs' complaint, ¶ 13; Defendant's answer, ¶ 13).

16.    Michael Rizzo declared under oath that he did "not know about this case [the foreclosure action] until January 21, 2002.  (Group Exhibit C, "Motion of Michael J. Rizzo and Louise M. Rizzo to Dismiss Case" ("Declaration of Michael J. Rizzo," ¶ 2, attached the to the Motion to Dismiss as Exhibit A)).

17.    Michael Rizzo also declared that he contacted the servicer of the mortgage, Fairbanks Capital, on January 22, 2002, and spoke with a representative of Fairbanks Capital, a Mr. Neal Hunt shortly after 7:00 a.m.  (*Id.* at ¶¶ 2-3).

18.     Mr. Rizzo further declared that he wired $4,000 to Fairbanks Capital at 9:01 a.m. on January 22, 2002, and that sent a certified check for $8,000 to Fairbanks Capital on January 25, 2002, via Federal Express. (*Id.* at ¶¶ 5-6).

19.     On January 28, 2002, current counsel for the Rizzos, the law firm of Edelman, Combs & Latturner, LLC, filed an additional appearance on behalf of the Rizzos. (Group Exhibit C, "Additional Appearance").

20.     On January 28, 2002, by way of a motion to dismiss, the Rizzos represented in part that "Mr. Rizzo reached an agreement for the reinstatement of the mortgage with plaintiff's servicing agent, Fairbanks Capital Corporation. The agreement called for the wire transfer of $4,000 that morning and $7,517.94 in a week." (Group Exhibit C, "Motion of Michael J. Rizzo and Louise M. Rizzo to Dismiss Case," ¶ 2).

21.     In said motion, the Rizzos represented that they had tendered $8,000 in certified funds to Fairbanks Capital Corporation. (*Id.*, ¶ 3).

22.     In said motion, the Rizzos represented that they had "entered into an unconditional agreement with plaintiffs, which has now been fully performed by plaintiffs" and that "an agreement to permit reinstatement was made by Fairbanks Capital. Fairbanks Capital obtained Mr. and Mrs. Rizzo's money as a result." The Rizzos further asserted that "the mortgage should be reinstated and the case dismissed." (*Id.*, ¶¶ 7 & 9).

23.     In said motion, the Rizzos did not object their payment of the amount tendered as being in violation of the Fair Debt Collection Practices Act or any other law. (*Id.*).

24.     On or about February 6, 2002, the Rizzos and the plaintiff/mortgage holder in the foreclosure action, Manufacturer's & Traders Trust Company, entered into an Agreed Order, which, among other things, provided that the Rizzos would tender $4,000.00 before February 27,

2002 to reinstate the subject loan and that upon Manufacturer's & Traders Trust Company's receipt of the payment, the loan would be reinstated and the matter would be voluntarily dismissed without prejudice. (Group Exhibit D, February 6, 2002, "Agreed Order," ¶¶ 4 & 6).

25.     On March 4, 2002, Manufacturer's & Traders Trust Company filed a motion to dismiss the foreclosure action, without prejudice, "on the ground that the mortgage has been reinstated." (Group Exhibit D, Manufacturer's & Traders Trust Company's March 4, 2002, "Motion to Dismiss Without Prejudice").

26.     On March 4, 2002, the circuit court entered an order dismissing the foreclosure action due to reinstatement of the subject mortgage. (Group Exhibit D, "Order of Dismissal").

Respectfully submitted,
PIERCE & ASSOCIATES, P.C.

By:     _____

One of Its Attorneys

David M. Schultz
James C. Vlahakis
HINSHAW & CULBERTSON
222 N. LaSalle Street, Suite 300
Chicago, IL  60601
312-704-3000

See Case
File For
Exhibits